# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**WILLIAM CHARLES WINTERS, II,**

    **Plaintiff,**

**v.**                                                                 Case No: 6:15-cv-1780-Orl-31DCI

**JUSTIN RANUM and THE CITY OF DAYTONA BEACH,**

    **Defendants.**

## ORDER

This matter comes before the Court without a hearing on motions for summary judgment filed by Defendant Justin Ranum ("Ranum") (Doc. 54) and Defendant City of Daytona Beach (Doc. 52) (the "City"), the response in opposition (Doc. 62) filed by the Plaintiff, William Winters ("Winters"), and the replies (Doc. 66, 67) filed by the Defendants.

**I.  Background**

This suit grows out of the August 14, 2012 arrest of Winters by Officer Ranum of the Daytona Beach Police Department. Winters had spent the evening out with three friends, ending up in the early morning hours at a restaurant called Nimo's Pizza. Responding to reports of a fight at the restaurant, Ranum drove his squad car through an alley alongside the restaurant to a parking lot behind it, where he encountered Winters and his friends. As Ranum approached, the four men scattered, with Winters trying to squeeze past Ranum and his stopped vehicle in the alley. When Ranum tried to stop Winters, there was a physical altercation, with both men ending up on the ground. Ranum arrested Winters, who was charged with battery on a law enforcement

officer and resisting arrest with violence.  In May, 2013, the State of Florida filed a *nolle prosequi* as to both counts.

In the Second Amended Complaint (Doc. 34), which is the operative pleading, Winters asserts the following claims:   a false arrest claim under state law against the City (Count I);   a false arrest claim under state law against Ranum (Count II); state law assault and battery claims against the City (Count III); state law assault and battery claims against Ranum (Count IV); a state law negligent training claim against the City (Count V); and a Section 1983 Fourth Amendment claim against the City (Count VI).   By way of the instant motions, the Defendants seek summary judgment as to all claims.

**II.    Legal Standard**

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact.   Fed.R.Civ.P. 56(c).   Which facts are material depends on the substantive law applicable to the case.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).   The moving party bears the burden of showing that no genuine issue of material fact exists.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).   In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine

issue for trial." *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553. Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. The Court is not, however, required to accept all of the non-movant's factual characterizations and legal arguments. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir 1994).

**III. Analysis**

Winters contends that Ranum arrested him without probable cause and used excessive force in doing so. Unfortunately for his case, he has no independent recollection of the relevant events, which occurred at the end of an evening celebrating at local bars and restaurants with three of his friends. One of those friends, Kirk Crandall, testified that the group visited three bars and three restaurants that evening[1] and had a "decent amount" to drink. (Doc. 53-3 at 13-14). Winters testified that he had been drinking that evening, but that he had no memory from the time the group left their first stop of the night – an oyster bar, where Winters had food and a mixed drink – until he woke up in the Volusia County Jail the next day. (Doc. 53-1 at 97-98).

---

[1] More specifically, Crandall testified that before going to Nimo's Pizza, the group had been to "a couple bars, a couple restaurants" and an establishment called "Lollipops." (Doc. 53-3 at 13).

For his part, Ranum testified that he was dispatched to Nimo's Pizza in response to a call about a fight; when he arrived, a taxi driver outside of Nimo's told him the participants had moved into the parking lot behind the restaurant. (Doc. 53-2 at 25-26). He drove his marked police vehicle through the narrow alley alongside Nimo's and encountered four young men, two of whom appeared to have been fighting. (Doc. 53-2 at 29-30). The men scattered, with two running across the parking lot away from Ranum, one running into the back door of the restaurant, and the fourth – Winters – running toward Ranum's vehicle. (Doc. 53-2 at 30-31). Ranum shouted for Winters to stop, but Winters tried to squeeze between the partially opened driver's-side door of Ranum's vehicle and a sofa sitting in the alley. (Doc. 53-2 at 33-34). Ranum again shouted for Winters to stop and, when Winters did not do so, he grabbed Winters around the upper torso and took him down. (Doc. 53-2 at 36-37). The pair struggled atop the sofa, eventually causing it to tip over. (Doc. 53-2 at 41-43). Ranum testified that Winters grabbed his testicles as they struggled and, subsequently, appeared to be attempting to grab his service belt and weapon, leading Ranum to deliver several knee strikes and a punch to subdue Winters. (Doc. 53-2 at 43, 45-46). Another officer arrived, who helped Ranum to place handcuffs on Winters. (Doc. 53-2 at 47-48).

Winters does not seriously dispute any of Ranum's testimony. As noted, he has no memory of the events at Nimo's, and he has not produced any evidence from anyone else – such as, for instance, his three friends – that contradicts Ranum's version of events.

A. <u>Counts I and II – False Arrest</u>

Under Florida law, false arrest is defined as the unlawful restraint of a person against that person's will. *Willingham v. City of Orlando*, 929 So. 2d 43, 46 (Fla. 5th DCA 2006). A defendant may raise probable cause as an affirmative defense to a claim for false arrest. *See*, *e.g.*,

*Amato v. Cardelle*, 56 F.Supp.3d 1332, 1334 (S.D. Fla. 2014) (citing *Tracton v. City of Miami Beach*, 616 So. 2d 457 (Fla. 3d DCA 1992)).

Under both Florida law and the Fourth Amendment, probable cause to make an arrest exists when the facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been or is being committed. *See Rankin v. Evans*, 133 F.3d 1425, 1434 (11th Cir. 1998) and *Whittington v. Town of Surfside*, 490 F.Supp.2d 1239, 1249 (S.D. Fla. 2007).

Based on Ranum's testimony, at the time he encountered Winters, Ranum knew that he had been dispatched in response to a report of a fight, and had subsequently been told that the participants in the fight had gone behind Nimo's. When he arrived behind Nimo's in his marked police vehicle, he found four men, at least two of whom appeared to have been fighting, and who fled – or, in Winters's case, attempted to flee – despite his repeated commands to stop. When Winters failed to stop under these circumstances, Ranum had probable cause to arrest him for resisting an arrest without violence. *See P.B. v. State*, 899 So. 2d 480, 482 (Fla. 3d DCA 2005). As there is no evidence contradicting Ranum's testimony, the Court concludes as a matter of law that probable cause existed for Winters's arrest, and his false arrest claims are therefore barred under both Florida and federal law.

B.  Counts III and IV – Assault and Battery

The same holds true for Winters' assault and battery claims. Under Florida law, the tort of assault involves "the apprehension of immediate, harmful or offensive contact with the plaintiff's person, caused by acts intended to result in such contacts, or the apprehension of them, directed at the plaintiff or a third person." *Doe v. Evans,* 814 So.2d 370, 379 (Fla.2002). Thus,

an essential element of the tort of assault is the apprehension of immediate harmful or offensive contact. Because Winters has no memory of the events that transpired at Nimo's, he cannot produce evidence that he ever feared contact from Ranum.

As for the battery claims, based on Ranum's testimony – *i.e.*, that Winters resisted arrest, grabbed his testicles and attempted to grab his duty belt and weapon – the amount of force Ranum used to defend himself and restrain Winters was justified:

> A battery claim for excessive force is analyzed by focusing upon whether the amount of force used was reasonable under the circumstances. *Dixon v. State,* 101 Fla. 840, 132 So. 684 (1931); *City of Miami v. Albro,* 120 So.2d 23 (Fla.3d DCA 1960); *Hutchinson v. Lott,* 110 So.2d 442 (Fla. 1st DCA), *cert. denied,* 115 So.2d 415 (Fla.1959). Law enforcement officers are provided a complete defense to an excessive use of force claim where an officer "reasonably believes [the force] to be necessary to defend himself or another from bodily harm while making the arrest." § 776.05(1), Fla. Stat. (1995).

*City of Miami v. Sanders*, 672 So. 2d 46, 48 (Fla. 3d DC 1996). Winters has not presented any evidence to contradict Ranum's testimony or to otherwise suggest that the amount of force he used was unreasonable under those circumstances. Accordingly, the Defendants are entitled to summary judgment on all of Winters' assault and battery claims.

    C.    <u>Count V – Negligent Training</u>

Negligent training occurs when an employer is negligent in the implementation or operation of its training program. *Cruz v. Advance Stores Company, Inc.,* 842 F. Supp. 2d 1356, 1359 (S.D. Fla. 2012). To show that the City was negligent, Winters would have to establish that the City owed a duty of care, that it breached that duty, and – most importantly for the instant case – that he suffered damages as a result of that breach. *See, e.g., Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1262 (11th Cir. 2001). Because he cannot prevail on his false arrest, assault, or

battery claims, Winters cannot establish that he suffered damages as a result of negligent training by the City.   Summary judgment will be entered on this point as well.

      D.      <u>Count VI – Section 1983</u>

Count VI – in which Winters makes false arrest, assault, battery, and negligent hiring claims against the City under 42 U.S.C. §1983 – fails for the same reasons that those claims failed under state law, as discussed above.   For example, the existence of probable cause also constitutes a bar to a Section 1983 action for false arrest, *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004), and Winters has no evidence to counter Ranum's testimony that the amount of force he used was reasonable under the circumstances.   Moreover, under Section 1983, a municipality is only responsible for the unconstitutional conduct of its officers when the municipality itself caused the constitutional violation.   *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694-95 (1978).   A plaintiff who intends to impose Section 1983 liability on a municipality must show a "direct causal link" between a municipal policy and his constitutional injuries.   *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

Even if he were able to establish that he had suffered a violation of his constitutional rights – which, as discussed above, he has not – Winters has not provided any evidence that the violation occurred as the result of some policy of the City.   Instead he simply asserts, without evidentiary support, that there were "approximately thirty (30) citizen complaints against Ranum."   (Doc. 62 at 13).   No effort is made to establish the existence of those complaints, to explain what Ranum was accused of and whether the accusation was proven to be true, or to show that they provided evidence of a pattern of misconduct on Ranum's part that the City did not try to correct.   *See, e.g., Depew v. City of St. Marys,* 787 F.2d 1496, 1499 (11th Cir. 1986) (finding municipal liability where "evidence revealed several incidents involving use of unreasonable and excessive force by

police officers," establishing that city had knowledge of improper police conduct and should have taken remedial action).

In consideration of the foregoing, it is hereby

**ORDERED** that the motions for summary judgment (Doc. 52, 54) are **GRANTED**. The Clerk is directed to enter judgment in favor of the Defendants and close the file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on June 2, 2017.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party